IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **JOSHUA ISAIAH MONEY,** | : | |
| | : | |
| Plaintiff | : | |
| | : | CASE NO. 5:23-cv-00377-MTT-CHW |
| VS. | : | |
| | : | |
| **C.E.R.T Officer ISOM,** *et. al.* | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. §1983 |
| Defendant | : | BEFORE THE U. S. MAGISTRATE JUDGE |
| _____ | | |

## ORDER AND RECOMMENDATION

This case is currently before the United States Magistrate Judge for screening as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). *Pro se* Plaintiff Joshua Isaiah Money, a prisoner at the Augusta State Medical Prison in Grovetown, Georgia, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. He also filed a motion for leave to proceed *in forma pauperis*. ECF No. 2. For the reasons discussed below, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is now **GRANTED**. However, it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED without prejudice** for failure to state a claim for which relief may be granted.

### MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Plaintiff filed a motion seeking leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). ECF No. 2. As it appears Plaintiff

is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* is hereby **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.  Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to the facility where Plaintiff is housed. It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution

until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

II.     Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT**

I. Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed". *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief". 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact". *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless". *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

4

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action". *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.     Plaintiff's Allegations

Plaintiff was previously incarcerated at Baldwin State Prison. ECF No. 1 at 5. Plaintiff states that on July 21, 2023, Defendants Isom and Britton entered his "segregation cell without alerting [him] or restraining [him] in handcuffs". *Id*. Plaintiff was clothed only in his underwear. Id. Plaintiff's cell door was left open. *Id*. Defendant Britton informed Plaintiff he had to submit a urine sample for a drug test and supplied him with a

test cup. *Id*. Plaintiff complains that he "tried to make Officers Britten and Isom exit the cell, so [he] could perform [his] bodily functions to provide a sample for the test, but both officers refused to exit the cell". *Id*. Plaintiff further complains that he "had to pull out [his] genitals in front of them while they were in extremely close proximity to [him] and staring at [him]". *Id*. Plaintiff states he urinated in the cup and passed the drug test. *Id*. Plaintiff claims that "Officers Britten and Isom committed the illegal act of voyeurism against [him] by forcing [him] to perform bodily functions and pull [his] genitals out in front of them". *Id*. Plaintiff further claims that these actions were "a violation of [his] 8th amendment right to be free from sexual abuse by prison guards". *Id*. He further claims that "this complaint is a sexual abuse and Prison Rape Elimination Act (PREA) complaint which does not have to exhaust the administrative grievance process to be brought forth as a lawsuit". *Id*. at 3. Plaintiff requests damages and unspecified injunctive relief. *Id*. at 6.

III. Plaintiff's Claims

Regarding prisons, the Supreme Court has "characterized the maintenance of security, internal order, and discipline as 'essential goals,' which at times require the 'limitation or retraction of ... retained constitutional rights'". *Block v. Rutherford*, 468 U.S. 576, 586 fn. 8 (1984) (citing *Bell v. Wolfish,* 441 U.S. 520, 546(1979)); *see also Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."). Indeed, a prisoner retains only those rights consistent "with his status as a prisoner or with the legitimate penological objectives of the

corrective system". *Harris v. Thigpen,* 941 F.2d 1495, 1513 (11th Cir.1991) (citations omitted); *see also Padgett v. Donald*, 401 F.3d 1273, 1278–79 (11th Cir. 2005) (citations omitted*)* ("Prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison, but they do not enjoy the same Fourth Amendment rights as free persons."). "Government… 'must be able to take steps to maintain security and order at [an] institution and make certain no weapons or illicit drugs reach detainees'". *Rutherford*, 468 U.S. at 586 fn. 8 (citing *Wolfish*, 441 at 540). To that end, prisoners must submit to random searches of their prison cells. *Hudson,* 468 U.S. at 526. They must submit to visual body-cavity searches executed without individualized suspicion. *Wolfish,* 441 U.S. at 558. They must undergo routine tests of their blood, hair, urine, or saliva for drugs. *Green v. Berge,* 354 F.3d 675, 679 (7th Cir.2004) (Easterbrook J., concurring). "It is beyond question that a rational connection exists between a regulation requiring inmates to undergo urine testing for contraband drugs—including with respect to the quantity of urine required and the time/conditions required for producing a sample—and the legitimate governmental interest in maintaining secure prisons". *Baer v. McNeil*, No. 5:09CV222/SPM/EMT, 2010 WL 1816847, at *2 (N.D. Fla. May 6, 2010). Thus, here, any possible Fourth Amendment claim Plaintiff may be attempting to raise as to officers entering his cell unannounced and requiring Plaintiff to submit to a test of his urine for drugs is subject to immediate dismissal.

    As for Plaintiff's allegation that the Defendants watching him urinate during a drug test subjects the Defendants to liability under § 1983 because it is in violation of the Prison

Rape Elimination Act of 2003 ("PREA"), he has also failed to state a claim. "The PREA is a federal law, but "not every violation of federal law 'give[s] rise to a civil rights claim pursuant to section 1983. This is because section 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred.'" *Hawkins v. Walden*, No. 5:15-CV-208 (CAR), 2016 WL 5660338, at *7 (M.D. Ga. Sept. 28, 2016) (citing *De'lonta v. Clarke*, No. 7:11-cv-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) and *Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000)). The PREA was enacted to "address the problem of prison rape, authorize[ ] grant money, and create[ ] a commission to study the issue". 42 U.S.C. § 15601 *et seq.*; *see also Jones v. Schofield*, No. 1:08-CV-7 (WLS), 2009 WL 902154, at *2 (M.D. Ga. Mar. 30, 2009) ("A reading of the Prison Rape Elimination Act makes clear that its goal is to lessen the occurrence of rapes in prisons across this Country. Its focus concentrates on statistics, standards, developing information, and regulating federal funding in an effort to lessen prison rapes."); *Mosley v. Medlin*, No. CV 313-086, 2014 WL 3110027, at *9 (S.D. Ga. July 7, 2014) ("PREA seeks to compile data and statistics concerning incidences of prison rape and to adopt standards to combat the same, and 'does not confer upon Plaintiff any extra rights outside of the normal prison grievance system.'"). In plain terms, an alleged violation of the PREA is not actionable under § 1983. *See, e.g., De'lonta*, No. 7:11-cv-00483, 2012 WL 4458648, at *3; *Krieg v. Steele*, 599 F. App'x 231, 232-233 (5th Cir. 2015) (unpublished) (per curiam) (stating "other courts addressing this issue have found that the PREA does not establish a private cause of action for allegations of prison rape" and finding "any claim raised under

the PREA is properly dismissed as frivolous"); *Diamond v. Allen*, No. 7:14-CV-124(HL), 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014) (internal quotation marks and citations omitted) ("PREA does not create a private cause of action for allegations of prison rape, or otherwise confer any extra rights outside of the normal prison grievance system."); *Law v. Whitson*, No. 2:08-cv-0291-SPK, 2009 WL 5029564, at *4 (E.D. Cali. Dec. 15, 2009) ("The [PREA] Act in itself contains no private right of action, nor does it create a right enforceable under Section 1983."); *Fatir v. Phelps*, No. CV 18-933-CFC, 2019 WL 2162720, at *5 (D. Del. May 17, 2019) (finding that "[a]s a matter of law, Plaintiffs cannot pursue a § 1983 claim based on Defendants' alleged failure to comply with the PREA" and that "the invocation of Constitutional Amendments does not save the PREA claims".); *Littlejohn v. Bloom*, No. 1:20-CV-1749-MLB-JKL, 2020 WL 13880278, at *1–2 (N.D. Ga. May 4, 2020), *report and recommendation adopted sub nom. Littlejohn v. Atkins*, No. 1:20-CV-01749, 2020 WL 13880294 (N.D. Ga. July 2, 2020) ("The PREA does not grant prisoners any specific rights, thus an alleged violation of the PREA is not actionable under § 1983."). Accordingly, any § 1983 claim made by the Plaintiff based upon the PREA is subject to dismissal.

Similarly, Plaintiff also appears to base his § 1983 claims in allegations that the Defendants committed a "criminal sexual abuse offence" of "voyeurism". ECF No. 1 at 5. However, § 1983 imposes liability only for violations of rights protected by the Constitution and laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create

a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."). The United States Supreme Court has noted that it has "been quite reluctant to infer a private right of action from a criminal prohibition alone" and has particularly "refused to infer a private right of action from a 'bare criminal statute'". *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (quoting *Cort v. Ash*, 422 U.S. 66, 80 (1975)). Thus, allegations that a Defendant committed a criminal law infraction is prodigiously insufficient to support a § 1983 claim. *See Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1191 (11th Cir. 2004) ("[I]n general, allegations that local officials failed to comply with state laws are not federal constitutional claims."); *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) ("[A] violation of state law— even assuming one occurred in this case—does not per se make a state actor liable under § 1983. State law violations do not form the basis for imposing § 1983 liability."); *Govan v. U.S. Dep't of Veteran Affairs*, 787 F. App'x 599, 602 (11th Cir. 2019) ("Plaintiffs generally cannot pursue civil claims based on violations of a criminal statute unless the criminal statute itself creates a private right of action"); *Love v. Delta Air Lines*, 310 F.3d 1347, 1352-53 (11th Cir. 2002) (stating "[c]riminal statutes generally do not provide a private cause of action"). Accordingly, to the extent Plaintiff seeks to assert claims in this suit based upon a violation of a criminal law against "voyeurism" and seeks damages thereof from the Defendants, he has failed to state a § 1983 claim.

Lastly, Plaintiff alleges that the Defendants actions violated his "8th amendment rights". ECF No. 1 at 5. The Eleventh Circuit has recognized that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment. *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006), *abrogated on other grounds by Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020). The question thus arises what actions by a prison official qualify as sexual abuse of a prisoner. In the Eleventh Circuit, "the 'sexual assault' of a prisoner by a prison official in violation of the Eighth Amendment occurs when the prison official, acting under color of law and without legitimate penological justification, engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner". *DeJesus v. Lewis*, 14 F.4th 1182 (11th Cir. 2021). "At a minimum, those sexual acts include intentional sexualized touching underneath clothing, such as fondling or penetration; coerced sexual activity; combinations of ongoing harassment and abuse; and exchanges of sexual activity for special treatment or to avoid discipline." *Id.* at 1196 (footnotes omitted) (citing *Sconiers v. Lockhart*, 946 F.3d 1256, 1266 (11th Cir. 2020). For conduct that does *not* satisfy the foregoing definition of "sexual assault," a contextual, fact-specific analysis is applied to determine whether the conduct qualifies as sexual assault. *DeJesus*, 14 F.4th at 1196 n.12; *Id.* at 1197 & n.15. In other words, whether the conduct qualifies as a sexual assault for Eighth-Amendment purposes "depends on the facts of a given situation". *Id.* at 1197. Relevant inquiries include: "whether the allege conduct is of a sexual nature; whether the alleged sexual assault did in fact occur; and whether the

11

prison official intended to sexually gratify himself or acted for the purpose of humiliating, degrading, or demeaning the prisoner". *Id*.

Plaintiff complains that the Defendants watched him urinate into a cup while conducting a random drug screening of the Plaintiff. In particular, he complains that the Defendants refused to leave his cell during the urine testing when asked to do so by the Plaintiff and that while his genitals were out to urinate, the Defendants "were in extremely close proximity to [him] and staring at [him]". ECF No. 1 at 5. Plaintiff makes no allegations which fall within the listed categories of "sexual acts" as defined by the Eleventh Circuit. *See id*.; *DeJesus*, 14 F.4th at 1196. Nor does Plaintiff make any allegations that would remotely suggest that the Defendants actions were for any other reason other than to conduct a random drug screening of the Plaintiff. *See DeJesus*, 14 F.4th at 1197 (finding that "there are times when prison officials have a legitimate penological purpose to touch a prisoner in what may be an invasive manner," and deference is owed to prison officials). This Court cannot find where these Defendant's actions were "harmful enough, or "sufficiently serious," to violate the Constitution. *See Sconiers,* 946 F.3d at 1265 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) and *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Accordingly, Plaintiff's claims of sexual abuse in violation of the Eighth Amendment are subject to dismissal for failure to state a claim.

For the reasons set forth above, it is **RECOMMENDED** that Plaintiff's claims as to the Defendants be **DISMISSED without prejudice.**

IV.     Conclusion

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED** and it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED without prejudice** pursuant to § 1915A for failure to state a claim.

## OBJECTIONS

Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Chief Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this recommendation. The parties may seek an extension of time to file objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection should be no longer than **TWENTY (20) PAGES** in length. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 19th day of April, 2024.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge